**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**KIMBERLY–CLARK CORPORATION, Defendant.**

No. C–73–42.

United States District Court,
W. D. Tennessee, W. D.

March 27, 1974.

William A. Carey and Katherine A. Mazzaferri of the Equal Employment Opportunity Commission, Washington, D. C., for plaintiff.

J. Fraser Humphreys, Jr. and Alexander W. Wellford, Jr., of Lawler, Humphreys & Dunlap, Memphis, Tenn., J. Leonard Samansky, Lipkowitz, Plaut, Solberg & Harris, New York City, for defendant.

## ORDER ON MOTION TO CONSOLIDATE AND ON MOTION FOR SUMMARY JUDGMENT AND TO STRIKE

WELLFORD, District Judge.

This suit was filed by the Equal Employment Opportunity Commission (E.E.O.C.) on February 2, 1973, raising various broad allegations of sex discrimination as well as several additional allegations of racial discrimination. The sole defendant named was Kimberly-Clark Corporation, and the alleged violations involved the Memphis mill or plant. In response to the Court's orders granting defendant's Motion for a More Definite Statement, the E.E.O.C. filed an amended complaint on June 15, 1973, and a second amended complaint on June 28, 1973, in which the E.E.O.C. set forth the details of the charges upon which suit was based. Of these charges, only one, that of Floyd L. Munn, Jr., contained allegations of racial discrimination, and the remaining charges contained allegations of sex discrimination. On the grounds that none of the charges formed a proper basis for suit by the E.E.O.C. and that the E.E.O.C. had not properly complied with the Court's orders, the defendant filed on July 16,

1973, a Motion for Summary Judgment or Motion to Strike or Motion to Compel Compliance with the Court's orders.

As part of the Motion for Summary Judgment, the defendant contended that any allegations of racial discrimination based upon the charge filed by Floyd L. Munn, Jr. were improper and should be dismissed, since suit had already been filed in the *Munn* case based upon the same charge. In a supplemental memorandum filed by the defendant, it was argued that consolidation was improper and that the E.E.O.C. should have sought to intervene in the pending class action as provided in the Equal Employment Opportunity Act of 1972 (the "1972 Act").

Insofar as the E.E.O.C.'s only racial discrimination claims in this case were based upon the Munn charge, it duplicates charges made by experienced and competent counsel for Munn who filed suit alleging violations of Title VII against Kimberly-Clark and several locals of the United Paperworkers International Union in this Court on August 31, 1972 (No. C–72–300). E.E.O.C. now seeks consolidation of this case with the *Munn* (and his co-plaintiff Charlie R. Jones, Jr.) case. Both Kimberly-Clark and the unions oppose the consolidation asserting that the E.E.O.C. should be bound to follow Section 706(f)(1) Title VII requirements of intervention.

This Court has sustained similar arguments in E.E.O.C. cases previously. E.E.O.C. v. McLean Trucking, et al, 7 EPD § 9178, (No. C–72–313, 1974) and E.E.O.C. v. ET & WNC Transportation, et al, (No. C–72–280, 1974). See E.E.O.C. v. Missouri Pacific Railroad, 493 F.2d 71 (8th Cir. 1974); Crump v. Wagner Elec. Corp., 369 F.Supp. 637 (E.D.Mo.1973); E.E.O.C. v. Cronin, (E.D.Mo.1973); E.E.O.C. v. Union Oil Co. of Calif., 369 F.Supp. 579 (N.D.Ala. 1974). As stated in the *Missouri Pacific* case, *supra*:

"The scheme of the statute itself, as thus described, negates the Commission's double-barreled approach. Once either the Commission or the charg-

ing party has filed suit, Section 2000e(f)(1)[1] speaks only in terms of intervention—the absolute right of the charging party to intervene if the Commission elects to file suit within 180 days; the permissive right of intervention on the part of the Commission in the private action. The statute cannot be read to warrant duplicitous lawsuits when both actions find their genesis in *one* unlawful employment practice." (emphasis ours)

A charge based on sex discrimination is not per se a basis for a suit asserting both sex and racial discrimination. E.E.O.C. v. New York Times, d/b/a WREC–TV, (W.D.Tenn. 1974); Fix v. Swinerton, 320 F.Supp. 58 (D.C.Colo.1970). Compare Sanchez v. Standard Brands, 431 F.2d 455 (5th Cir. 1970). Under the circumstances here, particularly since the *Munn* case pending will be concerned solely with racial discrimination matters, the discrimination by reason of race or color allegations and prayers for relief based solely on the Munn charge should be dismissed. Defendant's motion to strike in this respect will be granted without prejudice to the E.E.O.C.'s permissive right of intervention in No. C–72–300, or even to bring a subsequent action on any other appropriate racial discrimination charges.

The bulk of the sex discrimination charges upon which E.E.O.C. bases its cause of action are what have been referred to by the parties as the "Meek group of charges." These charges involve alleged discrimination by defendant in respect to lay-offs of certain female employees in 1965 and in 1966, and as to which suit was filed in this Court in 1966, Cooper, et al. v. Kimberly-Clark Corp., et al., No. C–66–251. All ten of the "Meek group" females through their retained counsel filed charges with the E.E.O.C. prior to suit in that case, asserting a class action complaint

against the employer and Local 704 of the Paper Mill Workers.[2] After a full opportunity for hearing on the merits and the adequacy and propriety of settlement, the Court entered on December 8, 1967 an order in accordance with a stipulation and settlement, which set out, in pertinent part:

"The complaint in this action . . . is dismissed on the merits, . . . and judgment . . . is in full and final discharge and satisfaction of any and all claims, or causes of action, or part or parts thereof, against any and all defendants herein and with respect to any and all claims and demands growing out of or arising from or based upon any transaction, matter or cause, either involved in, alleged or referred to . . . directly or indirectly, in this action and the complaint filed herein."

The "Meek group" in 1971 filed charges again with the E.E.O.C. pertaining to the 1965 lay-offs, but adding that "the company refuses to restore our seniority rights," particularly by "refusing to give us credit, for seniority and other purposes, for a period of time we were unlawfully in lay-off status during 1965 and 1966." The company now asserts that the ten females comprising this "Meek group" are estopped from further proceedings by reason of the 1967 court approved settlement, and that principles of equitable estoppel, collateral estoppel and/or res adjudicata should now prevent the E.E.O.C. from proceeding with a new cause of action herein based on these same charges.

"A consent judgment or decree based on a compromise and settlement precludes the parties *and their privies* from maintaining an action upon any claim *within the scope* of such compromise and settlement, although such claim was not in fact litigated in the suit in which the judgment or decree was entered."[3] (emphasis ours).

---

1. Same as Sec. 706(f)(1) of the Civil Rights Act of 1964, Title VII, as amended.

2. One of the defendants in the *Munn* case, No. C–72–300.

3. 47 Am.Jur.2d, Judgments, Sec. 1092.

See All States Investors v. Sedley, 399 F.2d 769, 773 (6th Cir. 1968); Acree v. ALPA, 390 F.2d 199, 202 (5th Cir. 1968), cert. den. 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122. A party knowingly participating in a judicial proceeding, and obtaining and accepting benefits therefrom by way of judgment to the detriment of the other party, is bound thereby and should be estopped from later challenging or derogating that judgment. 31 C.J.S. Estoppel § 115. See American Nat'l Bank v. Taussig, 255 F.2d 765, 768 (7th Cir. 1958); St. Louis Typographical Union v. Herald Co., 402 F.2d 553 (8th Cir. 1968).

■ There are further reasons that those in the Meek group[4] who file charges in 1971 should not be considered as a basis of this action by E.E.O.C. On November 10, 1972, all of these females signed an agreement amounting to a waiver and release of claims against defendant with respect to adjustments to service dates for seniority purposes. They are further estopped from pursuing any claim, and, for the reasons stated, neither should the E.E.O.C. under these circumstances be permitted to rely upon these claims relating to 1965 and 1966 lay-offs. E.E.O.C. further admits in its reply to defendant's motion that the Commission did not issue a formal decision of reasonable cause in this group of charges. (p. 17) It has therefore failed to comply with administrative requirements on these charges preliminary to instituting suit thereon. We need not reach the question as to whether the Meek group of charges, or amended charges, were timely filed.

■ Rule 23, dealing with class actions, was amended in 1966, "in part to make it clear that civil rights suits for injunctive or declaratory relief can be brought as class actions. . . . Moreover, by their very nature, civil rights class actions almost invariably involve a plaintiff class."[5] That same authority goes on to point out that "according to traditional res judicata notions, a member of the class in a Rule 23 suit is considered to be a party by representation, and will be bound to the same extent as an actual party." (Sec. 1789). The "Meek group" were the representatives of the E.E.O.C. in a practical sense in the 1966 class action suit alleging sex discrimination, and the E.E.O.C. as a "privy" to that group of plaintiffs should not now be heard to assert a later cause of action either to undo or to obtain greater relief than was accorded to those plaintiffs under the order and judgment specifically approving the "fairness, adequacy and propriety of the proposed settlement and compromise." Insofar, therefore, as the action of the E.E.O.C. pertains to the complaining class of females effected by the 1967 judgment and order of this Court in Cause No. C–66–251, relating to the prior "lay-off of girls because of lack of work . . . not based on seniority," the defendant Kimberly-Clark's motion for summary judgment is granted in part.[6] Nor may the E.E.O.C. in this suit relitigate the terms of the compromise settlement entered into by the plaintiffs independently represented by competent counsel in 1967, regarding that issue or those issues.[7] The E.E.O.

---

4. Meek, Slayton, Etheridge,* Foster, Cox, Hudson, Wade, Jeffcoat,* Roser, Scott and Local # 704. (* These two are no longer employed by Kimberly-Clark.)

5. Wright & Miller, Federal Practice & Procedure, Vol. 7A, Sec. 1776.

6. The E.E.O.C. in its supplemental memorandum filed with the Court stated that the "settlement provided monetary relief to 26 persons who were effected by a November, 1965, lay-off". Those 26 persons, together with the E.E.O.C., are estopped or precluded from challenging or setting aside the terms of that 1967 compromise settlement judgment. Others, outside that class, are not so bound.

7. United States v. Harrison County, Miss., 399 F.2d 485, 491 (5th Cir. 1968) relied upon by the E.E.O.C. sets out four conditions as to applicability of res judicata. All are present here. (1) Identity of things sued for; (2) identity of cause of action; (3) identity of persons and parties to the action; and (4) identity of quality or character in the person against whom the claim is made.

C. may, however, as may the individuals effected, properly assert any claim or contention that Kimberly-Clark (or the defendant Union) has not carried out its obligations under the compromise settlement effectuated in 1967. Of course, aggrieved persons, whether within or without the "Meek group" or the 26 persons receiving benefits in the 1967 case, claiming sex discrimination on the part of defendant concerning lay-offs or other activities after 1967, are not within the purview of the summary judgment awarded Kimberly-Clark. Plaintiff herein may pursue its action with regard to sex discrimination charges after 1967 without regard to a bar of res judicata. The evidence as to circumstances of the 1965 lay-off may be relevant, moreover, to a claimed pattern of sex employment discrimination.

The "Williams group" of charges, involving four females—Williams, Edmiston, Mobley and Johnston—were all filed more than four years before this action was instituted by E.E.O.C., which in 1970 found reasonable cause on these charges of sex discrimination.

Defendant claims also that the suit by E.E.O.C. is untimely under all the circumstances, particularly with respect to the dates of filing of the individual charges.

The Equal Employment Opportunity Act of 1972 (Title VII of the Civil Rights Act of 1964) became effective March 24, 1972. All of the Williams group charges were then at this time pending for more than three years before the E.E.O.C., which then brought suit almost a year later. The E.E.O.C. may not be subject to the one year Tennessee statute of limitations on the bringing of civil rights actions as are individual plaintiffs in 42 U.S.C. § 1981 et seq. cases. United States v. Summerlin, 310 U.S. 414, 417, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940). Defendant has cited no authority holding that the E.E.O.C. is similarly subject to a one year statute.

The charge of Lois Dunavant remains for consideration, since this decision has touched upon all others. The Munn charge and the Meek group of charges have been, in effect, removed from this proceeding as issues except as the circumstances may be relevant to other pertinent sex discrimination allegations. The defendant's motions have been overruled as to the Dunavant and Williams group charges unless defendant's contention with respect to interpretation of Section 706(f)(1) of the 1972 Amendment is sustained. The limitation sought to be imposed upon the E.E.O.C. by defendant has been urged upon this Court in a number of other similar E.E.O.C. actions. This particular division of the Court has until this time declined to rule on this contention in light of the sharply differing interpretations placed on this section, and the statutory scheme of the 1972 Act, by the numerous other District Courts which have considered the issue. We are particularly mindful of Judge Robert McRae's decision in Civil No. C–73–283, E. E. O. C. v. U. S. Industries, dated January 3, 1974, ruling in favor of plaintiff's position.

For purposes of this case, and because of its peculiar circumstances, the Court is called upon to rule upon defendant's motion for summary judgment based upon this ground. First of all, the legislative history of the Act makes it unclear as to what Congress intended in amending the Act. The Conference Committee's "Section-by-Section Analysis," Legislative History of the Equal Employment Act of 1972, p. 1847, makes reference to what an aggrieved person may do under 706(f)(1) so as not to endure "lengthy delays if the Commission or Attorney General does not act with due diligence and speed." The Commission's action under that section is to be taken within 180 days from the filing of the charge. Subsection (e) provides that a charge may be filed within 180 days after the alleged unlawful employment practice occurred. Thus, if defendant's contention is correct, nearly a year may expire after an act of discrimination before suit were required to be instituted by the E.E.O.C. The Sixth Circuit has previously construed time re-

quirements of the 1964 Act strictly in Goodman v. City Products, 425 F.2d 702 (6th Cir. 1970).

The first reported case to deal with this question was Judge Tjoflat in the Middle District of Florida.[8] He ruled, in effect, that the Commission must commence an action after filing of a charge, (and the giving of notice, investigation, determination of reasonable cause and attempted reconciliation) within 180 days thereafter. Thereafter, the Northern District of California interpreted the 180 day requirement as "only a period in which a private party must wait while the Commission attempts to conciliate." EEOC v. Bartenders International Union, 369 F.Supp. 827 (N.D.Calif.1973). Chief Judge Jones in EEOC v. Cleveland Mills Co., 364 F.Supp. 1235, 1238 (W.D.N.C., 1973), however, held that this section "contains a limitation upon the Commission's power or authority to bring suit. It is not a statute of time limitation in the ordinary sense," and therefore suit had to be brought within the 180 day period in which it was given its new 1972 authority. None of these cases cited any other as a precise basis for its decision. Again, without citation of authority or precedent,[9] another District Court reached a result contrary to Container Corp. and Cleveland Mills holding that "after the 180th day [in question] (if notice is given to the aggrieved employee) both the E.E.O.C. and the aggrieved employee may sue." On the other hand, in 1973, a Virginia District Judge held that the 1972 amendment under consideration meant that the "E.E.O.C is now given 180 days to decide whether to commence suit itself or to issue a right to sue letter.[10]"

One of the first cases to cite any previous decisions, or the rationale thereof on this question as a basis of its holding was E.E.O.C. v. Duff Brothers, 364 F.Supp. 405 (E.D.Tenn.1973). That Court found E.E.O.C. v. Bartenders Int'l Union to be correct in refusing to apply any "such restrictive interpretation upon the authority of the Commission to initiate civil actions." There was also agreement with the rationale of Duff Brothers, supra, in E.E.O.C. v. Eagle Iron Works, 367 F.Supp. 817 (S.D.Iowa, 1973), although no other case law authority was cited as a basis for its decision. Judge Hancock was the first, from the cases noted by this Court, to analyze the varying and diverse decisions of other District Courts on this question in E.E.O.C. v. L & N R.R. Co.[11] His decision was to the effect that the "sole time within which the Commission may file suit on its own behalf" is the time period "from the 30th day after a charge is filed until the 180th day after the charge is filed." That opinion relied upon Cleveland Mills, supra, and disagreed with both Bartenders Int'l Union and Mobil Oil, supra, making particular reference to the Section 706(f)(1) statutory scheme and the subsequent right of the Commission to intervene. The judge there was not impressed with the E.E.O.C. contention that a defendant might be delayed indefinitely "in a state of suspended animation" since it had "no time limitations" placed on its right to bring suit.

▆ E.E.O.C. v. L & N. R.R., supra, was followed closely by a well-reasoned opinion reaching the same result in E. E.O.C. v. Union Oil Co. of Calif., 369 F. Supp. 579 (N.D.Ala.1974). Judge Pointer in the later case analyzed the decisions of eight other District Courts[12]

8. EEOC v. Container Corp. of America, 352 F.Supp. 262 (D.C.1972).

9. E. E. O. C. v. Mobil Oil Corp., 362 F.Supp. 786 (W.D.Mo.1973). Judge Collinson noted Cont. Corp., supra and Bartenders Local # 41, supra, but on other issues.

10. Gilbert v. Gen. Elec. Co., 5 E. P. D. ¶ 8663 (E.D.Va.1973). To the same effect

see E. E. O. C. v. Firestone Tire & Rubber Co., 366 F.Supp. 273 (D.C.Md.1973).

11. 368 F.Supp. 633 (N.D.Ala.1974).

12. He referred to L & N R. R., Duff Bros., Mobil Oil, Bartenders Int'l Union, Eagle Iron Works, U. S. Industries, Cleveland Mills, and E. E. O. C. v. Hickey-Mitchell Co., 372 F.Supp. 1117 (E.D.Mo., 1972).

in concluding that the 180 day period in the statute under consideration was a statute of limitations upon the E.E.O.C.'s right to sue. Among the reasons given for this conclusion which seem logical and reasonable in light of the uncertainty of the legislative background are these:

(1) Such a time restriction (180 days) is a part of the statutory scheme of controlled time frames.

(2) "A time limitation is needed to assure *speedy disposition* of charges of discrimination." (emphasis ours).

(3) "A time limitation will not hinder eradication of employment discrimination" since new charges may be filed or an aggrieved individual may sue in his own right and on a class action basis.[13]

This Court recognizes the counter-arguments advanced by the E.E.O.C. and by nearly one-half of the courts dealing with this problem. They, too, have merit, but an unlimited right to sue in light of other time specifications in the statute appears beyond the scope of the Commission's intended authority, especially since it may intervene in important cases in a private suit under Title VII even beyond this 180 day time frame. It may remain for Congress to clarify this provision in light of its evident uncertainly. This Court, with some trepidation in view of the split of authority, rules that defendant's motion for summary judgment should be granted.

The granting of defendant's motion, however, is coupled with the further ruling that all discovery matters accomplished in this cause by plaintiff from defendant Kimberly-Clark will be admissible, if relevant or material, to any other causes of action in this Court for racial or sex discrimination against Kimberly-Clark under Title VII of the Civil Rights Act, as amended.

13. "Although the 1972 amendment to Title VII empowers the Commission to bring its own actions, the private right of action remains an essential means of obtaining judicial enforcement of Title VII. 42 U.S.C. § 2000e–5(f)(1)." Alexander v. Gardner-Denver Co., 415 U.S. 36, 45, 94 S.Ct. 1011, 1018, 39 L.Ed.2d 147 (1974).